UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN T. OLSZYK,

                              Plaintiff,

v.                                                             3:20-CV-0445
                                                                          (TJM/ML)
JAMES THORNE; SALVATION ARMY;
SARA MACLEAN; and MICHAEL
BARRASSE,

                              Defendants.
_____

APPEARANCES:                                                    OF COUNSEL:

JOHN T. OLSZYK
  Plaintiff, *Pro Se*
Lackawanna County Prison
1371 North Washington Avenue
Scranton, Pennsylvania 18501

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

      The Clerk has sent this *pro se* complaint together with an application to proceed *in forma pauperis* filed by John T. Olszyk ("Plaintiff") to the Court for review. (Dkt. Nos. 1 and 2.) For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 2), and recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety, in part with leave to amend and in part without leave to amend.

**I.     BACKGROUND**

Construed as liberally[1] as possible, Plaintiff's Complaint appears to allege that his civil rights were violated by Defendants James Thorne, Salvation Army, Sara Maclean, and Michael Barrasse (collectively "Defendants"). (*See generally* Dkt. No. 1.) The handwritten Complaint is, in part, indecipherable and meandering. (*Id.*)

The Complaint appears to allege that Defendants Thorne and Maclean are employees of the Salvation Army. (*Id.*) Plaintiff alleges that Defendant Barrasse is a judge who oversaw Plaintiff's parole revocation[2] and in or around December 2018, released Plaintiff to a program administered by the Salvation Army (the "Program"). (*Id.*) The Complaint alleges that the Program was designed to address mental health and addiction, included living arrangements provided by the Salvation Army, and had a work component where enrolled members of the Program were required to work and their pay was used to offset the cost of living. (*Id.*)

Plaintiff alleges that on December 21, 2018, he had an abscessed tooth and wanted to obtain medical treatment for it but was told by employees of the Salvation Army that he could not receive treatment until his "30 day blackout was over." (*Id.*) Plaintiff alleges that, as a result, he attempted to drain his abscessed tooth in his assigned room and the Binghamton City paramedics and police department responded. (*Id.*) Plaintiff alleges that while speaking with

---

[1]     The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2]     The Complaint appears to use the terms probation and parole interchangeably and it is not clear which is an accurate depiction of Plaintiff's status. (*Compare* Dkt. No. 1 at 14 [referring to a violation of probation for a failed urinalysis], *with* Dkt. No. 1 at 19 [referring to Plaintiff's sentencing for his violation of parole], Dkt. No. 1 at 22 [referring to Plaintiff's parole officer], and Dkt. No. 1 at 24 [referring to Plaintiff's sentence of "over 23 months of State Parole"].) The Court will refer to Plaintiff's "parole" status for the sake of consistency.

his counselor, Defendant Thorne, he made a hypothetical statement to the effect of "what would have happened if I ran the officers turned around jumped out my window and went on the river." (Dkt. No. 1 at 7.)  Plaintiff alleges that Defendant Throne interpreted his hypothetical statement as a suicide threat and dismissed him from the Program, which resulted in "toss[ing]" Plaintiff in the freezing rain with "no[]where to go[,] no money[,] or even jacket." (Dkt. No. 1 at 8.)

Plaintiff alleges that on December 22, 2018, he returned to the Salvation Army and requested to be re-enrolled in the Program. (Dkt. No. 1 at 9.)  Plaintiff alleges that despite passing a breathalyzer and having a willingness to start the Program again—which are the only requirements for readmittance into the Program—Defendant Thorne denied Plaintiff's readmittance and threatened to have him arrested. (*Id*. at 20-21.)

Plaintiff alleges that at some point in time, he informed his doctor about the symptoms he was experiencing and the doctor ordered bloodwork, a M.R.I., and C.T. scan to be conducted at Lourdes Hospital. (*Id*. at 9.)  Plaintiff alleges that Defendant Thorne accompanied him to Lourdes Hospital for the various tests and threatened to eject Plaintiff from the Program if Plaintiff elected to have the M.R.I. and C.T. scan completed. (*Id*. at 10.)  Plaintiff alleges that he was denied the medical care and brought back to work at his assignment in the Program. (*Id*. at 12.)

Plaintiff alleges that his discharge paperwork from the Program states that he was discharged because he "need[ed] . . . better medical help," which rendered him homeless. (*Id*. at 13.)  Plaintiff alleges that Defendant Thorne was negligent in discharging him from the Program when he knew of Plaintiff's mental health concerns. (*Id*.)  In addition, Plaintiff alleges that Defendant Barrasse was negligent by not "assigning [him] to a correct treatment facility that was better fitted for [his] right to proper treatment." (*Id.* at 14.)  Plaintiff alleges that Defendant

3

Barrasse had "full and complete knowledge" of the Program because he was featured in a newspaper article shaking hands with a representative from the Salvation Army "upon the agreement of future residents." (*Id.*)

Plaintiff alleges that the work conditions that he was required to endure as part of the Program, violated Occupation Safety and Health Administration (OSHA) standards. (*Id.* at 15.) For example, Plaintiff alleges that there was ice on the windows, the heater only worked at 9:30 a.m., the windows were screwed shut, the back fire escape door was locked by a chain and master lock, the warehouse was cluttered with holes in the floor, and the Salvation Army does not wash clothing brought in from the various collections. (*Id.* at 15-16.) In addition, Plaintiff alleges that his wages were improperly garnished. (*Id.* at 17.)

Plaintiff alleges that his discharge from the Program "severly (sic) inhibits (sic) injured the outcome of his sentencing for violation of parole." (*Id.* at 18.) In addition, Plaintiff alleges that on December 22, 2018, he was "found floating in the Chenango River by Emergency Rescue Team of Broome County and rushed to the hospital." (*Id.* at 21.) Plaintiff alleges that he was homeless until the warrant for his arrest on January 6, 2019. (*Id.*) Plaintiff alleges that his family suffered mental anguish because they were worried about his well-being from December 22, 2018, to January 6, 2019. (*Id.* at 22-24.)

Based upon the foregoing allegations, the Complaint appears to assert the following four claims: (1) a claim of cruel and unusual punishment in violation of the Eighth Amendment and 42 U.S.C. § 1983; (2) a claim that Defendants violated Plaintiff's right to due process pursuant to the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983; (3) a claim of disability discrimination pursuant to § 504 of the Rehabilitation Act, Americans with Disabilities Act,

Fourteenth Amendment, and 42 U.S.C. § 1983; and (4) negligence pursuant to New York common law. (*See generally* Dkt. No. 1.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

Plaintiff also filed an application for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

## II.   PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[3] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[4]

## III.   LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

---

[3] The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[4] Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV.   ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A.   Absolute Judicial Immunity

Plaintiff's Complaint appears to assert claims against Defendant Barrasse for actions he allegedly took in his position as judge overseeing Plaintiff's parole revocation. It is well settled that "officials acting in a judicial capacity are entitled to absolute immunity against § 1983

7

actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see also Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (citations omitted) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages. Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'"); *Mahapatra v. Comstock*, 97-CV-7129, 1998 WL 88054, at *1 (2d Cir. Feb. 26, 1998) ("[T]he district court properly dismissed the claims for damages based on absolute immunity. Judges are shielded from liability for civil damages for judicial acts performed in their judicial capacities."). This immunity applies to state court judges who are sued in federal court pursuant to 42 U.S.C. § 1983. *Pizzolato v. Baer*, 551 F. Supp. 355, 356 (S.D.N.Y. 1982), *aff'd sub nom. Pizzolato v. City of New York*, 742 F.2d 1430 (2d Cir. 1983). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978).

The Complaint is devoid of facts plausibly suggesting that Defendant Barrasse acted in the clear absence of all jurisdiction. As a result, I recommend that the claims against Defendant Barrasse be dismissed in their entirety based on the doctrine of absolute judicial immunity.

### B.     Claims Pursuant to 42 U.S.C. § 1983

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen*

*v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  Thus, § 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to "redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

There is no single test that is determinative of whether a private person or entity may be a state actor, but rather a host of factors.  *Baum . N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 428 (N.D.N.Y. 2011) (Treece, M.J.).  A state actor may be found when: (1) "[the challenged activity] results from the State's exercise of coercive powers"; (2) "the State provides significant encouragement, either overt or covert . . . or when a private actor operates as a willful participant in joint activity with the State or its agents"; (3) "it is controlled by an agency of the State;" (4) "it has been delegated a public function by the State [known as the public function test]"; or (5) "it is entwined with governmental policies or when government is entwined in its management or control[.]"  *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296 (2001) (citations, quotation marks, and alterations omitted).[5]

Drawing all reasonable inferences and construing the Complaint liberally, it alleges that Plaintiff was released from being held on a parole violation to the Salvation Army to receive rehabilitative services.  (*See generally* Dkt. No. 1.)  In addition, the Complaint alleges some

---

[5]   On occasion, these criteria have been stated differently but the impact remains the same:

> The conduct of private actors can be attributed to the State for [§ 1983] purposes if (1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State. *See Sybalski v. Indep. Group Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008).

*Hogan v. A.O. Fox Mem'l Hosp.,* 346 F. App'x 627, 629 (2d Cir. 2009).

agreement between the Salvation Army and the State[6] to place "future residents" with the Salvation Army. (Dkt. No. 1 at 14.)

These allegations are insufficient to plausibly allege that the Salvation Army or its employees are state actors for purposes of liability pursuant to 42 U.S.C. § 1983. *See Reaves v. Dep't of Veterans Affairs*, 08-CV-1624, 2009 WL 35074, at *3 (E.D.N.Y. Jan. 6, 2009) (collecting cases) (holding that the complaint failed to state a claim under § 1983 because the Salvation Army is a private organization, its staff members are not "state actors" and even if the plaintiff intended to assert that the shelter and alleged actors were "under contract" with the City of New York, he cannot show that the shelter or the organization are performing any public function sufficient to turn the shelter or its employees into state actors for purposes of § 1983 liability); *Morton v. The Salvation Army*, 05-CV-2620, 2005 WL 2234003, at *3-4 (S.D.N.Y. Sept. 12, 2005) (holding that the Salvation Army was not a state actor where it had no independent legal authority over, or duty to, the plaintiff, who was released from prison on the condition that he immediately begin a drug treatment program and he enrolled in a program that the Salvation Army operated); *see also Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (dismissing claims pursuant to 42 U.S.C. § 1983 where the plaintiff failed to allege facts plausibly suggesting that the defendants' actions were attributable to the state and the defendants—including the Salvation Army—were private charities); *Stone v. New York City Dep't of Homeless Servs.*, 159 F. App'x 324, 325 (2d Cir. 2005) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 835 (1982)) ("With respect to the Salvation Army, [the plaintiff] alleges neither rights violations nor state action.").

---

[6] It is unclear to the Court whether the alleged agreement between the Salvation Army and the "State" refers to the state of Pennsylvania or the state of New York.

As a result, I recommend that Plaintiff's claims pursuant to 42 U.S.C. § 1983, be dismissed for failure to state a claim.

### C.     Disability Discrimination

#### 1.     Americans with Disabilities Act ("ADA")

The Complaint refers to the ADA generally, and does not identify which title it asserts a claim of disability discrimination pursuant to.

Title I of the ADA requires a plaintiff to exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission before pursuing litigation in federal court.  42 U.S.C. § 12117.  The Complaint fails to allege that Plaintiff exhausted his administrative remedies.  However, Plaintiff's claims also do not appear to concern his employment by Salvation Army and are thus, not subject to the administrative exhaustion requirement.  *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) (per curium) ("Title III, unlike Title I, does not require administrative exhaustion.").

Title II of the ADA "proscribes discrimination against the disabled in access to public services."  *Harris v. Mills,* 572 F.3d 66, 73 (2d Cir. 2009) (citing *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84-85 (2d Cir. 2004), *corrected,* 511 F.3d 238 (2d Cir. 2004)).  It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "The public entities defined in the ADA are state or local governments and their instrumentalities."  *Sherman v. Black*, 510 F. Supp. 2d 193, 197 (E.D.N.Y. 2007) (citing 42 U.S.C. § 12131(1)).  Here, the Salvation Army and its employees are not a public entity for purposes of the ADA.  *See Thomas*, 841 F.3d at 638-39 (holding that Title II of the ADA was inapplicable to the Salvation Army

because it is not a public entity); *see also Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006) (a private hospital performing services through a contract with the city is not an instrumentality of the state, which is best read as referring to a creature of a state or municipality).

Title III of the ADA prevents discrimination on the basis of a disability in places of public accommodation. 42 U.S.C. § 12182. It provides a private right of action for injunctive relief but no right of action for monetary relief. 42 U.S.C. § 12188; *see Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (holding that Title III of the ADA "authorizes private actions only for injunctive relief, not monetary damages."); *Powell*, 364 F.3d at 86 ("Monetary relief . . . is not available to private individuals under Title III of the ADA."); *see also Ervine v. Deser View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) ("Damages are not an available remedy to individuals under Title III of the ADA; individuals may receive only injunctive relief."). Here, "[s]ince [P]laintiff seeks only monetary relief with respect to [his] ADA claims," the Complaint "fails to state a plausible claim for relief under Title III of the ADA." *Sandler v. Benden*, 15-CV-1193, 2016 WL 9944017, at *16 (E.D.N.Y. Aug. 19, 2016), *aff'd*, 16-3218, 2017 WL 5256812 (2d Cir. Nov. 13, 2017).

As a result, I recommend that Plaintiff's disability discrimination claims pursuant to the ADA be dismissed.[7]

### 2. Rehabilitation Act

As with the ADA, the Rehabilitation Act forbids discrimination based on a disability. However, the Rehabilitation Act differs in two key ways. First, it only applies to programs

---

[7] In the alternative, I find that Plaintiff failed to allege facts plausibly suggesting he is an individual with a disability, as set forth in Part IV.C.2 of this Order and Report-Recommendation.

receiving federal assistance. 28 U.S.C. § 794. Second, the Rehabilitation Act requires that a plaintiff show that the exclusion was "solely by reason of her or his disability." *Id.* As a result, to state a claim for a violation of the Rehabilitation Act, a plaintiff must plead: (1) that a program receives federal funding; (2) that he is "disabled" within the meaning of the Act; (3) that he is otherwise qualified for a program; and (4) that he was excluded from that program solely because of his disability. *Putkowski v. Warwick Valley Cent. Sch. Dist.*, 363 F. Supp. 2d 649, 654 (S.D.N.Y. 2005).

Plaintiff does not plead facts that enable the Court to plausibly infer that he qualifies as an "individual with a disability," as that term is used in the Act. To qualify as an individual with a disability within the meaning of Section 504, a plaintiff must plead that (i) he suffers from a physical or mental impairment; (ii) that the impairment affects a "major life activity;" and (iii) that the impairment "substantially limits" the major life activity. *See Bragdon v. Abbot*, 524 U.S. 624, 630-31 (1998) (discussing definition of "disability" under the Americans with Disabilities Act ("ADA")) (citing 42 U.S.C. § 12102(2)); *see also B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 159 (2d Cir. 2016) (noting that "Section 504 expressly incorporates . . . the ADA's definition").

Plaintiff alleges in general terms that he was experiencing mental health "problems" and that his tooth was abscessed. (Dkt. No. 1); *see Burdick v. Town of Schroeppel*, 16-CV-1393, 2017 WL 5509355, at *13 (N.D.N.Y. Jan. 31, 2017) (Dancks, M.J.) ("A plaintiff's complaint must plead facts plausibly suggesting that his alleged disability can meet all of the elements contained in the ADA's definition of disability."); *see also Thomas*, 841 F.3d at 639 (holding that the plaintiff's failure to adequately identify her mental disability and her vague factual allegations regarding her mental illness, failed to plausibly allege that she is "handicapped"

13

pursuant to the Fair Housing Act); *Hale v. King,* 642 F.3d 492, 500 (5th Cir. 2011) (holding that, "[t]o establish a claim under [42 U.S.C. § 12102(1)(A)], a plaintiff must allege that he (1) has a[n] . . . impairment that (2) substantially limits (3) a major life activity," and dismissing plaintiff's complaint where it failed to allege, *inter alia,* "that his conditions substantially limited him in his performance of a life activity"); *Cox v. Civista Med. Ctr.,* 16 F. App'x 185, 186 (4th Cir. 2001) (affirming district court's dismissal of the plaintiff's complaint because it failed to "demonstrate a disability" under 42 U.S.C. § 12102(1) (A) or (B)); *Ajuluchuku v. Macy's,* 12-CV-1855, 2012 WL 5464467, at *3 (E.D.Cal. Nov. 7, 2012) (dismissing plaintiff's amended complaint because it did "not allege facts establishing any of [the] elements [of 42 U.S.C. § 12102(1)]"); *Thompson v. New York City Dep't of Probation,* 03-CV-4182, 2003 WL 22953165, at *3 n.5 (S.D.N.Y. Dec. 12, 2003) ("Under the ADA definition of 'disability,' merely pleading a physical impairment without specifying that it 'substantially limits' a 'major life activity' may be insufficient to state a claim for relief."); *Detko v. Blimpies Rest.,* 924 F. Supp. 555, 557 (S.D.N.Y. 1996) (dismissing plaintiff's complaint for failure to state a claim where the complaint failed to allege that his speech impediment *"substantially* limits his speaking" (emphasis in original)).

The Complaint is devoid of factual allegations that Plaintiff's impairments affected a "major life activity" or that the impairment "substantially limits" the major life activity. (*See generally* Dkt. No. 1.); 42 U.S.C. § 12102(1); *see Collins v. Giving Back Fund*, 18-CV-8812, 2019 WL 3564578, at *13 (S.D.N.Y. Aug. 6, 2019) (dismissing the plaintiff's claims pursuant to the Rehabilitation Act because, *inter alia*, she failed to plead facts from which the Court could

infer that her bipolar and post-traumatic stress disorders "substantially affected" her ability to perform any "major life activities.").[8]

In addition, and in the alternative, the Court notes that, "[i]t is a defense to claims under the Rehabilitation Act that [a plaintiff] may pose a 'direct threat' to the welfare of others." *McGeshick v. Principi*, 357 F.3d 1146, 1151 (10th Cir. 2004); *see Thomas*, 841 F.3d at 640-41 (discussing the "difficult dilemma" that would face charitable organizations if denying access to an unstable applicant subjected a shelter to extended litigation and potential liability). By Plaintiff's own allegations, he was discharged from the Program because he required more medical assistance than the Salvation Army was able to provide. (Dkt. No. 1 at 13.) This is the very type of discretion that must be afforded to charitable organizations to ensure the safety of all program participants and employees.

As a result, I recommend that Plaintiff's disability discrimination claim pursuant to the Rehabilitation Act be dismissed.

---

[8] Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Bragdon v. Abbott*, 524 U.S. 624, 638-39 (1998) (citing 45 C.F.R. § 84.3(j)(2)(ii); 28 C.F.R. § 41.31(b)(2)). The term "'[s]ubstantially limits' is not meant to be a demanding standard," *see* 29 C.F.R. § 1630.2(j)(3)(i), but, "[i]t is well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations." *Whalley v. Reliance Grp. Holdings, Inc.*, 97-CV-4018, 2001 WL 55726, at *4 (S.D.N.Y. 2001) (citing *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 151 (2d Cir. 1998)). Courts require a plaintiff to do more than simply allude to his impairments in his pleading; he must plead *how* those impairments significantly impacted his major life activities, or he will not survive a motion to dismiss. *See Schwartz v. New York State Ins. Fund*, 17-CV-8973, 2018 WL 3442962, at *5 (S.D.N.Y. My 17, 2018); *Graham v. Macy's Inc.*, 14-CV-3192, 2015 WL 1413643, at *3 (S.D.N.Y. Mar. 23, 2015).

### D. New York State Common Law Claims

In addition to alleging that Defendants violated his civil rights pursuant to 42 U.S.C. § 1983, the ADA, and the Rehabilitation Act, Plaintiff also asserted a pendent state law claim alleging negligence.  In the event that Plaintiff's federal claims are dismissed, I recommend that the Court decline to exercise supplemental jurisdiction over his state law claim.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.").

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[9]

---

[9]   *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can

Here, I recommend dismissal with prejudice as to Defendant Barrasse. *See Wellington v. Foland*, 19-CV-0615, 2019 WL 3315181, at *11 (N.D.N.Y. July 24, 2019) (Lovric, M.J.) (recommending dismissal with prejudice and without leave to amend, claims against a village court judge based on the doctrine of absolute immunity), *report and recommendation adopted*, 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019) (Suddaby, C.J.); *Brooks v. Ukieley,* 14-CV-6662, 2015 WL 235406, at *4 (E.D.N.Y. Jan. 16, 2015) (dismissing the plaintiff's claims in their entirety with prejudice against Judges Ukieley and Toomey based on the doctrine of judicial immunity); *Gonzalez v. Sharpe,* 06-CV-1023, 2006 WL 2591065, at *3 (N.D.N.Y. Sept. 8, 2006) (Scullin, J.) (dismissing without leave to amend, the plaintiff's claims against U.S. District Court Judge Gary L. Sharpe based on the doctrine of judicial immunity).

This Court has serious doubts about whether Plaintiff can amend to assert actionable claims against Defendants Thorne, Maclean, and Salvation Army. However, I am unable to conclude with complete certainty that if permitted leave to amend his complaint, Plaintiff could not assert plausible claims pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act. Accordingly, I recommend that leave to amend be granted.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y.

---

rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI.  SUMMARY, RECOMMENDATION, AND ORDER

Having reviewed Plaintiff's IFP application, I find that he meets the requirements for IFP status, and therefore grant his motion for leave to proceed without prepayment of fees. Turning to the merits of Plaintiff's Complaint, I recommend that (1) Plaintiff's claims against Defendant Barrasse be dismissed with prejudice and without leave to amend; and (2) that the claims against Defendants Thorne, Maclean, and Salvation Army be dismissed without prejudice and with leave to amend.

**ACCORDINGLY**, it is

**ORDERED** that the application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's claims against Defendant Thorne, Maclean, and Salvation Army for failure to state a claim pursuant to 28 U.S.C. 1915(e)(2)(B); and it is further

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's claims against Defendant Barrasse because they seek monetary relief against a defendant who is immune from such relief pursuant to 28 U.S.C. 1915(e)(2)(B).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[10]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[11]

Dated: June 17th, 2020
      Binghamton, New York

*Miroslav Lovric*
Miroslav Lovric
U.S. Magistrate Judge

---

[10]  If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

[11]  The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).